**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

GINA YOUNG, et al.,

Plaintiffs,

v. CIVIL ACTION NO. 2:12-cv-01324

APOGEE COAL COMPANY LLC, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the court is the Defendants' Motion to Dismiss [Docket 26]. For the reasons stated below, the motion is **GRANTED with respect to Count Four** and otherwise **DENIED**.

## I. Background

This case arises out of an accident that resulted in the death of Richard Young, Jr. Mr. Young was an employee of defendant Apogee Coal Company LLC ("Apogee Coal") at the Guyan Mine in Logan County, West Virginia. On May 14, 2011, Mr. Young was instructed by his supervisor to remove the counterweight on a Caterpillar 992G end loader in order to gain access to the machine's fuel tank. (Compl. [Docket 1-1], at 6). The 11,685 pound counterweight fell directly on top of Mr. Young and killed him. The plaintiffs allege that Mr. Young had never performed maintenance on this machine and had not received any training or instruction on how to properly remove the counterweight. (*Id.* at 7).

The defendants, Apogee Coal and Apogee Coal's holding company, Patriot Coal Corporation ("Patriot Coal"), currently move to dismiss two counts: Count Three for Vicarious Liability and Count Four for Joint Venture. The defendants assert, among other things, that the

plaintiffs have failed to plead viable causes of action on which relief can be granted.

**II. Legal Standard**

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court stated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 556 U.S. at 677-78. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint must contain enough facts to "nudge[] [a] claim[] across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

**III. Analysis**

The defendants argue that the plaintiffs have failed to properly plead claims for "vicarious liability" and joint venture. I will address each claim separately.

"Vicarious liability" and joint venture are not independent claims for relief. Nonetheless, West Virginia courts recognize that these theories may be asserted as independent claims as long as they are based on other underlying claims. *See, e.g.*, *Croye v. GreenPoint Mortgage Funding, Inc.*, 740 F. Supp. 2d 788, 799-800 (S.D. W. Va. 2010) (Copenhaver, J.) (rejecting argument that claim for joint venture, agency, and conspiracy is not independently cognizable); *see also Carroll v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-5985, 2013 WL 173728, at *5-6 (S.D. W. Va. Jan. 16, 2013) (Chambers, C.J.); *Proffitt v. Greenlight Fin. Servs.*, No. 2:09-cv-1180, 2011 WL 1485576, at *4 (S.D. W. Va. Apr. 19, 2011) (Copenhaver, J.). The Supreme Court of Appeals has repeatedly analyzed claims of joint venture and agency in depth without dismissing them for failure to state a claim. *See, e.g.*, *Herrod v. First Republic Mortgage Corp.*, 625 S.E.2d 373, 383 (W. Va. 2005) (joint venture, agency, and conspiracy); *Price v. Halstead*, 355 S.E.2d 380, 383-84 (W. Va. 1987) (joint venture). Additionally, the court in *Dunn v. Rockwell*, 689 S.E.2d 255 (2009), determined that a claim for civil conspiracy—another form of vicarious liability—could stand as an independent claim, even though the court recognized that "[a] civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." 689 S.E.2d at 269.

In light of these authorities, the court will assume that West Virginia law permits theories of vicarious liability to be asserted as independent claims, provided that they are based upon some other underlying wrong. Here, the claims for vicarious liability and joint venture are premised on Apogee Coal's alleged negligence that caused Mr. Young's death.

**A. Count Three – "Vicarious Liability"**

Count Three asserts that Patriot Coal is "vicariously liable" for the actions of Apogee Coal. Although the plaintiffs literally characterize this claim as one for vicarious liability, it appears to be an allegation of an agency relationship. I will therefore consider whether Count Three contains sufficient allegations to state a claim for agency.

"One of the essential elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." Syl. Pt. 7, *Harper v. Jackson Hewitt, Inc.*, 706 S.E.2d 63, 65 (W. Va. 2010) (quotation omitted). "[P]roof of an express contract of agency is not essential to the establishment of the relation. It may be inferred from facts and circumstances, including conduct." *Id.* at 75 (quotation omitted). Therefore, the court "must examine the facts of a particular case to determine whether an agency relationship exists." *Id.* (quotation omitted).

The defendants argue that under ordinary circumstances, a parent company is not responsible for the actions of a subsidiary, and that the "[t]he simple fact that they share common ownership is not enough to impute liability." (Mem. in Supp. of Defs.' Mot. to Dismiss [Docket 27], at 5). I agree, and that is why I will determine if the facts, as pled in Count Three, are sufficient to indicate the existence of an agency relationship in this case. In relevant part, the Count Three alleges the following:

> 29. At all times mentioned herein, defendant Apogee operated the Guyan

> Mine under the direction and control of defendant Patriot, which included the right to operate, maintain and make business decisions relative to the day-to-day activities of Guyan.
>
> 30. At all times mentioned herein, defendant Apogee was acting in furtherance of the business of Patriot, and was further acting within the scope of Apogee's agency relationship with Patriot.
>
> 31. Defendant Patriot caused defendant Apogee to engage in violations of the mine safety laws and the violations of commonly accepted and well-known safety standards within the surface mining industry that are set out in Count One, as well as other willful, reckless, negligent and intentional conduct of Apogee.
>
> 32. Defendant Patriot knew of and sanctioned the violations of the mine safety laws and the violations of commonly accepted and well-known safety standards within the coal mining industry that are set out in Count One and other willful, reckless, negligent and intentional conduct of Apogee.
>
> 33. As a proximate result of Apogee's violations of the mine safety laws, and its violations of the commonly accepted and well-known safety standards within the coal mining industry that are set out in Count One, and other willful, reckless, negligent and intentional conduct of Apogee, Richard Young Jr. died.

(Compl. [Docket 1-1] ¶¶ 29-33). In a different portion of the Complaint, the plaintiffs also allege that Patriot Coal "completely controls defendant Apogee." (*Id.* ¶ 4).

I **FIND** that these allegations sufficiently allege that Patriot Coal exercised control over the conduct of Apogee Coal requisite to an agency relationship. Count Three states that Patriot Coal "completely" controlled Apogee Coal and caused Apogee Coal to violate mine safety laws and industry standards. Count Three also states that Apogee Coal operated the Guyan mine "under the direction and control" of Patriot Coal and that Patriot Coal had the right to "operate, maintain and make business decisions relative to the day-to-day activities of Guyan." These factual allegations are more than legal conclusions or bare recitations of the elements of agency. Therefore, the defendants' motion is **DENIED** with respect to Count Three.

**B. Count Four – Joint Venture**

Count Four alleges that Patriot Coal was engaged in a joint venture with Apogee Coal. A joint venture "is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge." Syl. Pt. 5, *Armor v. Lantz*, 535 S.E.2d 737, 739 (W. Va. 2000). Although the Supreme Court of Appeals "has never formulated any broad analytical test by which to determine the existence of a joint venture," it has identified certain "distinguishing elements or features essential to the creation of a joint venture." *Id.* at 743.

> As between the parties, a contract, written or verbal, is essential to create the relation of joint adventurers. . . . To constitute a joint adventure the parties must combine their property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, but the contributions of the respective parties need not be equal or of the same character. There must, however, be some contribution by each party of something promotive of the enterprise. . . . An agreement, express or implied, for the sharing of profits is generally considered essential to the creation of a joint adventure, and it has been held that, at common law, in order to constitute a joint adventure, there must be an agreement to share in both the profits and the losses. It has also been held, however, that the sharing of losses is not essential, or at least that there need not be a specific agreement to share the losses, and that, if the nature of the undertaking is such that no losses, other than those of time and labor in carrying out the enterprise, are likely to occur, an agreement to divide the profits may suffice to make it a joint adventure, even in the absence of a provision to share the losses.

*Id.* (quoting *Pownall v. Cearfoss*, 40 S.E.2d 886, 893-94 (W. Va. 1946)). "Another essential ingredient to an allegation of joint venture is control of the joint venture by the participants." *Croye v. GreenPoint Mortgage Funding, Inc.*, 740 F. Supp. 2d 788, 800 (S.D. W. Va. 2010) (Copenhaver, J.) (citing *Armor*, 535 S.E.2d at 745); *see also Robinson v. Quicken Loans, Inc.*, --- F. Supp. 2d ---, No. 3:12-cv-0981, 2013 WL 6817643, at *15 (S.D. W. Va. Dec. 24, 2013) (Chambers, C.J.) ("Joint venturers should also have 'equal control over the common commercial pursuit,' though 'the control required . . . is not actual physical control, but the legal right to control

the conduct of the other with respect to the prosecution of the common purpose.'") (quoting *Armor*, 535 S.E.2d at 745).

In support of Count Four, the plaintiffs allege the following:

> 21. Upon information and belief, defendant Patriot assisted and directed the operation of the Guyan Mine by performing technical, administrative, legal and other support services for defendant Apogee.
>
> 22. Upon information and belief, Patriot arranged for the sale of coal that was produced at the Guyan Mine.
>
> 35. Defendants Apogee and Patriot associated and contracted together to operate Guyan for profit, for which purpose they combined their property, money, effects, skill, and knowledge.
>
> 36. Apogee negligently and intentionally operated Guyan in an unsafe manner by violating mine safety laws and regulations and by violating commonly accepted and well-known safety standards within the coal mining industry that are set out in Count One, and by other willful, reckless, negligent and intentional conduct.
>
> 37. As a proximate result of Apogee's violations of mine safety laws and regulations and violations of commonly accepted and well-known safety standards within the coal mining industry that are set out in Count One, and other willful, reckless, negligent and intentional conduct of the Apogee defendants, Richard Young Jr. died.

(Compl. [Docket 1-1] ¶¶ 21-22, 34-36).

I **FIND** that these allegations fail to state a claim for joint venture. Although the plaintiffs allege that Patriot Coal was involved with the operations of the Guyan mine, and that Patriot Coal and Apogee Coal together operated Guyan for profit, there is no allegation that Apogee Coal had any legal right of control over the venture. In fact, the Complaint specifically alleges that Patriot Coal "completely controls defendant Apogee." (Compl. ¶ 4).

Federal Rule of Civil Procedure 8 does not require that a plaintiff plead consistent theories of recovery. *See* Fed. R. Civ. P. 8(d). But Rule 8 does require that a complaint "contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Here, without allegations that Apogee Coal had a legal right to control the Guyan mine venture with Patriot Coal, the plaintiffs have not stated a claim for recovery under a theory of joint venture. Accordingly, the defendants' motion with respect to Count Four is **GRANTED** and Count Four is **DISMISSED**.

**IV. Reserving the Right to Amend**

In their response to the defendants' motion to dismiss, the plaintiffs argue that they should be permitted to amend the Complaint if the court dismisses any part of it here. The plaintiffs have not filed a *motion* to amend their complaint. Therefore, the plaintiffs' request for relief is not proper, and I do not consider it here.

**V. Conclusion**

For the reasons stated above, the Defendants' Motion to Dismiss [Docket 26] is **GRANTED with respect to Count Four** and otherwise **DENIED**. Court Four is **DISMISSED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 13, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE